# Supreme Court of Texas

No. 22-0398

Edward Van Huis, IV,

*Petitioner,*

v.

Marine Ventures, LTD,

*Respondent*

On Petition for Review from the
Court of Appeals for the Ninth District of Texas

JUSTICE YOUNG, joined by Justice Lehrmann and Justice Busby, dissenting from the denial of the petition for review.

Texas courts issue thousands of injunctions each year, as statistical reports confirm.[1] Many among that number afford at least nominally temporary relief. Temporary restraining orders and temporary injunctions may be quotidian occurrences in our judicial system, but for all their frequency, they always amount to an exercise of

---

[1] *E.g.*, Texas Office of Court Administration, Annual Statistical Report for the Texas Judiciary (Fiscal Year 2021), available at https://www.txcourts.gov/media/1454127/fy-21-annual-statistical-report-final.pdf.

extraordinary equitable power. That authority is often indispensable for preserving a party's rights. But what if an injunction turns out to be wrongful and causes harm that cannot be remedied on appeal?

Our rules supply one answer. To help prevent our courts from becoming tools not of equity but of inequity, an injunction-seeking applicant must post a bond in an amount set by the trial court: "In the order granting any temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant." Tex. R. Civ. P. 684. The bond requirement recognizes that restraining activities or funds in error is not costless for the affected party. At the same time, bonds may not be so high as to effectively foreclose access to injunctive relief. Getting the bond right can be essential to both sides.

After all, temporary injunctive relief is granted frequently; doing so can impose extraordinary costs and consequences; and such massive authority must not be abused, even unwittingly. Bonds play a key role. They help ensure the integrity of judicial actions and they deter cynical invocations of equitable remedies.

This Court, one would thus reasonably expect, surely has issued many opinions to guide Texas trial courts in exercising their discretion regarding injunction bonds. Yet one would be wrong to so presume. Our lower courts have long acknowledged the paucity of guidance from this Court. As the Third Court of Appeals noted (if not lamented), "[n]either Rule 684 nor the case law gives us much guidance in evaluating the sufficiency of the [injunction] bond . . . ." *Franklin Sav. Ass'n v. Reese*, 756 S.W.2d 14, 16 (Tex. App.—Austin 1988, no writ). The Fifth Court of Appeals has also marveled at the same point: "Surprisingly, there is

2

little authority to guide" the assessment of the adequacy of an injunction bond. *Currie v. Int'l Telecharge, Inc.*, 722 S.W.2d 471, 475 (Tex. App.—Dallas 1986, no writ). All these decades later, their implicit request for help has gone unanswered.

Perhaps perceiving this inexplicable gap in the law, two learned jurists—one a former member of this Court and both now federal judges—wrote an aptly titled article on the consequences of obtaining a wrongful injunction. *See* Jeffrey V. Brown & Andrew M. Edison, *Liability for a Wrongfully Obtained Injunction: The Cause of Action Few Lawyers Understand*, 32 The Advoc. (Tex.) 83, 83 (2005). "Although applications for injunctive relief are an everyday occurrence in our state courts," they began, "the wrongful injunction cause of action is a mysterious one to many litigators—indeed, it is largely unheard of." *Id.* The reason, they opined, was "because there are very few reported Texas cases discussing the wrongful injunction cause of action," and most of the few we do have are "quite old." *Id.* On the specific issue of calculating the amount of the bond, their comments were more poignant: "Trial courts often see the calculation of the bond as a shot in the dark—a guess for which the law provides little guidance . . . ." *Id.*

No decision by any Texas court should ever be "a shot in the dark." At the very least, decisions that recur with such frequency should not be. Unfortunately, little has changed in the eighteen years since that article was published. From what I can tell, this Court most recently confronted an issue involving an injunction bond in 1990—and even then, we had no occasion to address the proper *amount* of the bond. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 685–86 (Tex. 1990).

3

It may be cold comfort, but we at least are not alone in our failure to address this area. "Not many opinions," remedies scholars note, "say anything substantial about the issue." Douglas Laycock & Richard L. Hasen, *Modern American Remedies* 464 (2019). That includes the U.S. Supreme Court, which broached the subject in 1882, *see Russell v. Farley*, 105 U.S. 433 (1882), and "has said nothing since," Laycock & Hasen, *supra*, at 466.

We have done no better. My law clerks, with the help of Westlaw's search algorithm, report that our "most relevant" decision on injunction bonds came just ten years after *Russell*. *See Wood v. Hollander*, 19 S.W. 551 (Tex. 1892). That was the first year that Ellis Island welcomed immigrants. The first portable typewriter was patented. Walt Whitman and Lord Tennyson both died that year; J.R.R. Tolkien and Justice Robert Jackson were both born. It was not terribly long after Texans ratified our 1876 Constitution. All of this merely illustrates that when it comes to injunction bonds, litigants today—and particularly those in Texas state court—are essentially in the dark, equipped with nothing more than a few "quite old" decisions as their leading lights.

I describe what I regard as a bleak state of affairs to contextualize the Court's denial of the petition before us today. The petitioner, Edward Van Huis, IV, raises just one question for our review: whether the trial court abused its discretion by setting a $500 bond for a temporary injunction that froze $4 million in assets. In support of his argument that the trial court erred, Van Huis cites a total of three decisions from this Court in his petition. None has anything to do with the proper amounts at which trial courts must fix injunction bonds. Coincidentally, Van Huis

4

charges the respondent here, Marine Ventures, with the same omission: "Noticeably, none of the authority Respondent cites on the amount of bond set in a particular case is authority from this Court." Neither of them is to blame for this lack of authority. The fault lies only with the institution that has now rebuffed them.

It is possible, of course, that there is no reason to regret the dearth of decisions from this Court. Perhaps, despite the learned statements to the contrary, the law on this issue is so clear, settled, and predictable that we should not afford this case any space on our discretionary docket. But I see little evidence to be so sanguine. If anything, the evidence points the other way, as the commentators suggest. Indeed, one need look no further than three shared points between the present parties: (1) that trial courts' decisions on the amount of the bond are reviewed for an abuse of discretion; (2) that appellate courts review those decisions on a case-by-case basis; and (3) that, ultimately, the purpose of the bond is to pay for any damage caused by the injunction, if wrongful.

In my view, the first point is undisputed because it is so obvious. As for the second, case-by-case review *diminishes* rather than inspires my confidence in the state of the law. To say that a case will be reviewed as one unto itself, and not much else, is no more helpful than to say that the trial court's decision will be reviewed by King Louis IX who, sitting under an oak tree, will either affirm or reverse the decision according to his monarchical whims and intuition. *See* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1775–76 (1989). As for the third, reflecting on the purpose of the bond could perhaps be a useful *starting* point, but it certainly could not be the *only* point in the analysis.

5

Among those few courts to offer guidance, some have recognized additional considerations that channel discretion in setting a bond's amount, such as the nature of the rights at issue and the financial hardship to the plaintiff. *See, e.g.*, *Crowley v. Loc. No. 82*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984). But even in instances in which the trial court and parties did in fact account for every conceivable consideration, there could still be considerable uncertainty when the evidence of damages is either slim or speculative, as I suspect it usually is when a defendant must *foresee* how an injunction might harm him. As Dobbs put it, "Injunction bond cases raise many problems, not the least of which is the fact that judges often underestimate the potential harm to a defendant." Dan B. Dobbs, *The Law of Remedies* § 2.11(3), at 211 (3d ed. 2018).

That said, I take the point, primarily discussed in Marine Ventures' briefing, that the case law and literature generally place the burden of proof on the enjoined party, who is best positioned to know and offer evidence as to how the injunction (if wrongful) could result in a certain quantifiable amount of harm. And I will assume for the sake of argument that Van Huis, as the enjoined party contesting the amount of the bond, did not carry his burden of proof at the temporary-injunction hearing and failed to offer any evidence of damages he might incur as a result of having his assets frozen.

These circumstances, however, make this case *more* appropriate for us, not less. This case strips out any fact-bound feature that would otherwise complicate our review; it leaves us with only a pure legal

question, which is a perfect vehicle for us to make an initial foray into this area of the law.

After all, if Rule 684 *requires* trial courts to fix an amount for the injunction bond, can it really be true that a trial court may freely pick *any* amount it desires, no matter the value of the assets in dispute, if the enjoined party fails to carry his burden of proof to impose some particular amount? More concretely: absent any additional evidence, would a trial court properly exercise its discretion if, for example, it set a $1 bond for a temporary injunction that froze many millions of dollars in liquid assets?

As Van Huis points out, there is at least a potential split of authority in the Fifth Circuit as to whether a district court may dispense with an injunction bond entirely. *Compare Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990) ("Because of the importance of the bond requirement, failure to require the posting of a bond or other security constitutes grounds for reversal of an injunction." (internal quotation marks omitted)), *with Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) ("The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all.").[2]  And until two years ago, it was not even definitively

---

[2] At least one scholar, moreover, has noted a wider circuit split on the issue. *See* Michael T. Morley, *Erroneous Injunctions*, 71 Emory L.J. 1137, 1166–68 (2022) (noting the split and discussing the varying approaches). Relevant here, Professor Morley has also pointed out that circuit courts are further split on how to set the bond amount. Some courts require "the bond to be set at an amount that will compensate the defendant for its anticipated losses as a result of the injunction," while others "hold that the amount of the injunction bond is completely within a court's discretion." *Id.* at 1168–69. The attraction of today's case is that it invites us to take only one small but important step; it does not invite us to resolve every contingency.

resolved whether nominal damages could give a litigant standing to sue in federal court. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800 (2021). It seems entirely possible to me, therefore, that simply setting a nominal amount for an injunction bond, particularly in high-dollar disputes, could be tantamount to dispensing with the bond requirement altogether. Remedies scholars agree. *See* Laycock & Hasen, *supra*, at 464; Dobbs, *supra*, at 207.[3]

If a comparatively minuscule bond is essentially no bond at all, how should our rules—which *require* a bond, and presumably a real one—respond? One possibility: a clear rule of proportionality. If implemented, such a rule would seem easily administrable and the exact opposite of arbitrary, especially if it accounted for an injunction applicant's ability to post the bond (as, for example, when someone with meager resources but a strong claim would otherwise be denied access to court).[4]

The time-value of money—hardly a foreign concept to our law—is itself a proportionality concept. The Texas Finance Code, for example,

---

[3] Courts that issue injunctive relief without requiring a proper bond (or any at all) may also create perverse incentives. For example, particularly relevant to litigation in the federal courts is one scholar's opinion that the discretion to dispense with injunction bonds has incentivized litigants to seek universal injunctions with more frequency. *See* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 477 (2017) ("[G]iven the unfortunately moribund state of injunction bonds in federal courts, litigants have every reason to seek national preliminary injunctions against all regulatory initiatives, reversible or irreversible.").

[4] A bond that is too high, of course, would present serious constitutional, access-to-justice, and judicial-administration concerns. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987) (invoking *Younger* abstention in one of the most famous cases to come from Texas but noting the serious federal and state constitutional questions implicated by our State's then-prevailing supersedeas-bond requirement).

contains interest rates applicable to money judgments. *See* Tex. Fin. Code §§ 304.002–.003. And federal courts, mindful of the constitutional promise that takings be for "just compensation" and the basic remedial principle that the injured party be restored to the position that he would have occupied but for the wrong, have based interest rates for money judgments "at the rate 'a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal' would receive." *United States v. 429.59 Acres of Land,* 612 F.2d 459, 464–65 (9th Cir. 1980). That standard, too, conservatively measures the value of the loss of use of funds. At least in cases like this one, where the restrained party points to no factual circumstances other than the lost use of funds itself, it would likely benefit the administration of the law to have some minimal and objective line that reflects the material cost of being unable to use one's money.

At the same time, I do not bind myself to any particular measure. Had we granted the petition and set the case for argument, perhaps I would be persuaded that trial courts need not fix security for a bond at an amount proportional to the value of the assets the defendant is enjoined from using. There are many outstanding questions that have yet to be considered in this severely underdeveloped area of the law. I regret that we will not have the chance to address these matters in a case that so neatly presents a threshold question, unburdened by evidentiary disputes or multiple collateral questions.

Unfortunately, our denial today means that trial courts will have no choice but to continue shooting in the dark. Intermediate appellate courts will continue their case-unto-itself review. And this Court

9

continues its neglect of an issue that affects Texas litigants every day. Because granting this petition would allow us to potentially improve all three of these regrettable realities, I respectfully dissent from its denial.

_____

Evan A. Young
Justice

**OPINION FILED:** June 23, 2023